EDMONDSON, Circuit Judge,
concurring in the result:
I concur in today’s result. I concur because I cannot say with strong confidence that my colleagues on the panel are incorrect in the way they see the law working. But I concur with deep doubts. And if I were deciding the case alone, I expect I would reach a different result and write something largely in line with United States v. Monsanto, 924 F.2d 1186 (2d Cir.1991) (en banc), and United States v. E-Gold, Ltd., 521 F.3d 411 (D.C.Cir.2008).
In a case like this one, the use of a pretrial restraining order to freeze a defendant’s property is an entirely discretionary function, dependent on a decision initially made by the Executive Branch’s prosecutors. Congress has not commanded that such restraints be used in this kind of criminal case. Congress has merely given its permission to prosecutors to use the tool of pretrial restraints on property.
By its letter, the statute that applies in this case requires no adversarial hearing in the present circumstances. But this Court — correctly, I believe — has earlier decided that the Constitution (the combination of the Fifth Amendment and Sixth Amendment) does require some kind of pretrial evidentiary hearing. This appeal presents the question of how broad a hearing is required by the Constitution. This question is important, and one on which the circuits are split. The Supreme Court has never considered the question presented in this appeal.
By freezing a citizen’s property at a time when he is presumed innocent of crime, the citizen (and, as a practical matter, his family and perhaps others) is subjected to severe hardship. The hardship includes in this case the inability to employ counsel of Defendants’ choice to defend them in court from the mighty power of the federal government in a criminal proceeding. In the criminal proceeding ultimately, both their liberty and their property will be at stake. The chips are down.
In this criminal prosecution, the government is the aggressor. The government *1331 initiates the criminal action by bringing charges. The Executive Branch’s prosecutors are in the driver’s seat, choosing the nature and number of the charges to be brought and here choosing, in addition, to restrain the accused citizens’ property before trial. This later step is something extra, beyond ordinary prosecution; and in this case, the step is said to disable Defendants, in fact, from employing counsel to defend themselves.
That this add-on to ordinary prosecution — in effect, the seizure of property in advance of trial — would trigger extra and significant procedural safeguards for the citizen and his property is in no way odd to me. And by a probable cause hearing following the seizure, I do not understand the government to be forced to do anything, much less to try its criminal case twice. The government can simply choose to release the property. If the government does not wish to release the property, an evidentiary hearing should be conducted about probable cause on both the predicate criminal offense and the forfeitability (traceability of assets to supposed crime) of the specified property. At that hearing, the government can decide for itself precisely how much evidence it wishes to present about the criminal offense. If the government does not wish to reveal certain evidence before trial, the government can rightly withhold that evidence.
To ask the government to respond to a challenge on probable cause that the charged crime actually occurred is not to place on the government a heavy burden; everything needed for a conviction at trial is most likely not needed for probable cause. But, in any event, the government can decide for itself what cards to show before the actual trial; the worst that will happen is that the pretrial restraint on property will not continue. The criminal trial still looms ahead.
For the government to participate in an adversary hearing after seizure and before trial is inconvenient, of course. But the government’s inconvenience ought not to determine the outcome of this kind of case. The government takes this inconvenience upon itself by making its own choice about how it will proceed in a criminal case. At the outset, the choice to go for pretrial restraint is the prosecutors’ to make. Before deciding to employ a strategy that includes a pretrial restraint on a defendant’s property, the prosecutors can weigh (1) the extra time and trouble associated ■with an evidentiary pretrial hearing to keep up the restraint on a defendant’s property against (2) the benefit (as the prosecutors see it) to the country that would flow from prohibiting the defendant from using his property before trial. Cost-benefit choices are a necessary and normal part of life, including litigation.
Furthermore, the outcome of the ultimate trial itself need not be jeopardized by a probable cause hearing; if the government thinks that it is best to keep some evidence secret until the actual trial, the government can keep it secret. Moreover, the probable cause hearing very possibly can be tailored by the presiding judge in such a way as to make the hearing be significantly different from any kind of criminal trial.[1] Besides, even if the government loses at the probable cause hear *1332 ing, all the property itself might not ultimately be lost to the government — if a conviction is later actually obtained at the criminal trial.[2]
The Constitution’s Bill of Rights, including the Fifth and Sixth Amendments, was intended by the Framers to protect citizens from the high power of the federal government. The Constitution is to guarantee each citizen a fair deal when the federal government takes aim at him. More specifically about property, we ought to bear in mind this fact: “Liberty, property, and no stamps! It had been the first slogan of the American Revolution.” Catherine Drinker Bowen, Miracle at Philadelphia: The Story of the Constitutional Convention May to September 1787, at 70 (1966). Property rights, in themselves, deserve to be amply guarded by American courts. But when a citizen’s liberty (as in the present case) depends to a high degree on his property, the stakes are particularly high.
For the Federal Executive, in effect, to seize a citizen’s property; to deprive him thereby of the best means to defend himself in a criminal case; and then, by means of the criminal case, to take his liberty strikes me as a set of circumstances about which our nation’s history and its Constitution demands that the process at each step be fully fair. The potential for the dominating power of the Executive Branch to be misused by the arbitrary acts of prosecutors is real. The courts must be alert. To hear from the other side at a time when it matters (in this instance, before the criminal trial: a trial without counsel of Defendants’ choice) is the basic and traditional way that American judges assure things are fair. So, I do think that Monsanto and E-Gold, as law decisions, are very possibly on the right tack: stressing judicial responsibility and requiring a broader hearing to keep up a pretrial restraint on property when the restraint interferes with a citizen’s abilities to employ legal counsel of his choice to defend him in a criminal proceeding.
Like many appellate judges (probably most), I do not write separately or dissent every time that I find myself in disagreement with the majority of the judges on a case upon which we are working: almost always, the majority has taken a hard look at the case; and their position (in my view) is a reasonable one; and the resulting precedent will make an impression on the body of law that will be neither deep nor wide. I stop to write separately today because the case touches on the fundamentals and, thus, impresses me as being unusually important.
I am satisfied that the panel of judges of which I am a part has genuinely and seriously studied this case. Judge Marcus has written a thoughtful opinion in which Judge Fawsett has fully concurred. I have voiced my doubts, but I cannot firmly conclude that the legal position my experienced, able colleagues have taken is definitely erroneous. Therefore, I do not dissent, although I am uneasy that the limits that we set today for the hearing essential to continue a pretrial restraint on property might well be too limiting under the Constitution.

. This tailoring of the evidentiary hearing functions not just to protect evidence for trial. “In such an adversary hearing, the court could use limitations on the disclosure of evidence, such as in camera hearings and appropriate application of the normal rules of evidence to protect the grand jury proceedings against unwarranted invasion.” United States, v. E-Gold, Ltd., 521 F.3d 411, 419 (D.C.Cir.2008); see also United States v. Monsanto, 924 F.2d 1186, 1198 (2d Cir.1991) (en banc) (Fed.R.Evid. do not apply to hearings *1332 on whether a pretrial restraint on property can continue).

. The government retains the option of obtaining forfeiture of property after the government obtains a conviction. Forfeitable property in the hands of transferees commonly is recoverable by the government. I put aside the question of whether money paid to defense counsel as reasonable fees could be recovered, in a case like this one.